1  Jennifer B. Siverts CA SBN: 247060
   Law Offices of Jennifer B. Siverts
2  4455 Morena Blvd., Suite 213
   San Diego, CA 92117
3  T- (858) 272-5800
   F - (858) 272-2874
4  Email: Jennifer@jbsmlaw.com

5  Adam M. Kent  CA SBN: 270855
   Law Office of Adam M. Kent
6  4455 Morena Blvd., Suite 213
   San Diego, CA 92117
7  T- (619) 892-8422
   F- (888) 509-8232
8  Email: Attorney@AdamKentLegal.com

9
   Attorneys for Plaintiff/Relator Javier Lim
10

11

12

13                UNITED STATES DISTRICT COURT

14              SOUTHERN DISTRICT OF CALIFORNIA

15

16  UNITED STATES OF AMERICA, ex rel. JAVIER   )   Civil Case No. **'16.CV 07 4 0 GPC RBB**
    LIM                                        )
17                                             )   **COMPLAINT**
                                               )
18            Plaintiffs,                      )   **FILED IN CAMERA AND UNDER SEAL**
                                               )
19  v.                                         )   **FOR DAMAGES PURSUANT TO QUI TAM**
                                               )   **PROVISIONS OF THE FEDERAL CIVIL**
20  SALIENT FEDERAL SOLUTIONS, INC., a         )   **FALSE CLAIMS ACT, 31 U.S.C.A. SECTIONS**
    corporation, SALIENT CRGT HOLDINGS, INC. a )   **3729-3733**
21  corporation, BRAD ANTLE, an individual, J.D. )
    KUHN, an individual and DOES 1-100 inclusive, )
22                                             )   **DEMAND FOR JURY TRIAL**
                                               )
23            Defendants.                      )
                                               )
24                                             )
                                               )
25  //

26  //

27  //

28

                              1

FILED

APR 0 4 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

**INTRODUCTION**

1.     This is an action brought on behalf of the United States of America ("United States") by Plaintiff/Relator Javier Lim ("Relator") against Defendants for treble damages and civil penalties pursuant to the qui tam provisions of the Federal Civil False Clams Act, 31 U.S.C.A. sections 3729-3733 ("FCA") Pursuant to 31 U.S.C.A. section 3730(b)(2), this action is brought in camera and under seal.

2.     Defendants have knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval, and made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, or false records and statements to get false claims paid or approved by the United States, and knowingly conspired to do the same, for Defendants' performance on federal contracts designed to provide information technology services to the Department of Defense and other federal government agencies.

3.     The primary method used by Defendants was to misclassify the labor pool actually used to fulfill government contracts in order to charge higher overhead and fringe benefit rates to the government, which in *one* contract resulted in an overpayment by the United States of $709,468.63 for the year 2014 alone.

4.     Defendants also fraudulently submitted unallowable personal expenses in to the General and Administrative Expense Pool within federal contracts, including expenses for first class flights, and golf club memberships.

5.     Finally, as a result of Relator's complaints of fraudulent practices, Defendants retaliated against Relator by passing him over for promotions despite having higher qualifications than those moved ahead of him, denying him raises that similarly situated employees would receive and eventually terminating his employment.

6.     As required by the False Claims Act, 31 U.S.C.A. section 3730(b)(2), Relator has provided to the Attorney General of the United States and to the United States Attorney for the Southern District of California a copy of the Complaint and a written disclosure of substantially all material evidence and information possessed by Relator related to the complaint that establishes the client communications and work product of Relator's attorney, and have been submitted to the Attorney General of the United States and to the United States Attorney for the Southern District of California in their respective capacities as potential co-counsel in the litigation, Relator understands this disclosure to be confidential.

1

**VENUE AND JURISDICTION**

2    7.    Section 3732(a) of the FCA provides that "Any action under section 3730 may be brought

3  in any judicial district in which the Defendant… …can be found, resides, transacts business, or in which

4  any act proscribed by section 3729 occurred." A substantial part of the events or omissions giving rise to

5  the claims asserted herein occurred in this district, and Defendants can be found in this district or resides,

6  transacts business, or has performed acts proscribed by the FCA in this district.

7    8.    To Relator's knowledge, jurisdiction over this action is not barred by 31 U.S.C.A. section

8  3730(e): there is no civil suit or administrative proceeding involving the allegations of this Complaint to

9  which the United States is a party; there has been no public disclosure of these allegations or transactions;

10  and Relator is an original source of the information upon which these allegations are based.

11

**PARTIES**

12    9.    At all times mentioned herein, Relator JAVIER LIM (hereinafter referred to as

13  "RELATOR" or "LIM") was and is an individual who, between May of 2008 and October 9, 2015, was a

14  Project Control Analyst for Defendants in the County of San Diego. He brings this action based upon

15  direct and unique information he obtained as a result of his employment relationship with Defendant and

16  through said relationship, from other employees, entities or persons possessing facts and knowledge of

17  Defendant's actions in conducting Defendant's business.

18    10.    At all times mentioned herein, Defendant SALIENT FEDERAL SOLUTIONS, INC.

19  (hereinafter referred to as or "SALIENT") was and is a Delaware corporation registered with the

20  California Secretary of State whose principal place of business is located in Fairfax, Virginia, and

21  maintained an office and conducted business in San Diego County. In its capacities as a prime contractor

22  and as subcontractors as further described herein, did contract with the United States Government, its

23  agencies, departments, offices and courts, and/or with entities performing contracts with the United States

24  Government to provide information technology, engineering and intelligence analytics services.

25  SALIENT is a subsidiary of Defendant SALIENT CRGT HOLDINGS, INC.

26  //

27  //

28  //

11.     At all times mentioned herein, Defendant SALIENT CRGT HOLDINGS, INC., a.k.a SalientCRGT (hereinafter referred to as "SALIENTCRGT") was and is a Delaware corporation acting as a holding company pursuant to the merger between SALIENT and CRGT, Inc., in or about August of 2015.  SALIENTCRGT is a closed corporation with approximately 1,700 employees and annual revenue of approximately $375 million (SALIENTCRGT and SALIENT shall hereinafter be referred to collectively as "Corporate Defendants").

12.     BRAD ANTLE (hereinafter referred to as "ANTLE") is and was the Chief Executive Officer of SALIENT at all relevant times and is the current Chief Executive Officer of SALIENTCRGT and approved, explicitly and impliedly the false claims submitted to the United States, including the prohibited use of the General and Administrative Expense Pool paid for by the United States.

13.     J.D. KUHN (hereinafter referred to as "KUHN") is and was the Vice President of Finance and Corporate Controller of SALIENT at all relevant times and is the current Senior Vice President and Controller of SALIENTCRGT responsible for Defense Contract Audit Agency and Independent Audit oversight processes and relationships.  KUHN ordered the false claims to be submitted to the United States, as well as participated in the prohibited uses of the General and Administrative Expense Pool paid for by the United States (ANTLE and KUHN shall hereinafter be referred to collectively as "Individual Defendants").

14.     Relator is ignorant of the true identity and capacity of Defendants designated as DOES 1 through 20, but will amend the Complaint when their identities have been ascertained according to proof at the time of trial.  Plaintiff alleges on information and belief, however, that Defendants and every DOE Defendant is in some manner responsible for the acts, omissions, and conduct of Defendants, and were, and are, responsible for the injuries, damages, and harm, incurred by The United States.  Relator further alleges on information and belief that each such designated Defendant acted, and acts, as authorized agent, representative, and associate of the Defendants in doing the things alleged herein.

## OVERHEAD AND FRINGE BENEFIT RATE SCHEME

15.     Pursuant to 48 CFR 9903.201, because Corporate Defendants have received government contracts of over $50 million they are required to comply with certain Cost Accounting Standards ("CAS") and to disclose in writing and follow consistently their cost accounting practices.

16. In its Cost Accounting Standards Board Disclosure Statement SALIENT states

> Salient maintains memorandum records documenting support for the segregation & elimination of certain unallowable costs from costs charged to Federal government contracts. These records are prepared throughout the year and in connection with the preparation of the Company's Incurred Cost Submission ("ICS"). At the time of ICS preparation, the Company performs a detailed scrub of costs to further identify any additional unallowable costs that must be segregated from costs charged to Federal government contracts. For Federal contracting purposes, the Company maintains its books and records in US GAAP.

17. In April of 2012, SALIENT was awarded a contract with the Program Manager Defense Communications and Army Transmission Systems and the Department of Defense known as the Global Command Terrestrial Communications Support Contract (Hereinafter referred to as "GCTC" or the "GCTC Contract").

18. The three-year total anticipated contract value was approximately $80 million, though the total cost to the United States as of March 2015 was approximately $84.5 million for labor alone.

19. The GCTC Contract is a "Cost Plus Fixed Fee" (hereinafter "CPFF") contract and is therefore not exempt from CAS.

20. CPFF contracts allow government contractors to charge actual costs of labor plus a fixed percentage to be applied to the total cost of labor.

21. The percentage to be applied is determined by the labor pool that provided services for that particular CPFF contract.

22. In 2015 Defendants submitted their 2014 Incurred Cost Claims (a.k.a. Incurred Cost Submissions) electronically to the local Defense Contract Audit Agency ("DCAA") auditor for approval and payment (using "DCAA-ICE").

23. Corporate Defendants submitted a cost proposal to the government indicating that the GCTC contract had incurred $5,499,756.82 in total labor for 2014.

24. Defendants then indicated that they had used an indirect labor pool that provided for a payment on a management overhead rate of 21.00% of the total labor ("Legacy Management" pool).

25. In truth, Defendants had used a labor pool that should only have provided for 8.10% of the total labor ("International" pool) to go towards overhead and fringe benefits.

1      26.     This resulted in an overcharge to the United States in the amount of $709,468.63.

2      27.     Relator, as a project control analyst is responsible for assigning government contracts an

3   internal project number and directs project managers on budgeting and allowable costs to be applied to

4   specific projects.

5      28.     Relator was privy to all internal costs, project numbers, and all employees who actually

6   performed services for that project.

7      29.     Relator, as one of only two project control analysts in the San Diego office, is therefore

8   aware of which labor pool is used for each and every contract that is assigned to him, including the GCTC

9   Contract.

10     30.     In August of 2015, Relator's supervisor and Director of Information System, Jeremy Ross,

11  approached Relator to change the internal organization numbers on the GCTC contract from 1.13

12  ("International" pool) to 1.05 ("Legacy Management" pool).

13     31.     Shortly thereafter, Relator went to the Director of Accounting, Scott Thatcher, and asked

14  why he was told to change the organization numbers when they clearly had used employees assigned to

15  organization number 1.13 to perform this project.

16     32.     Mr. Thatcher responded that he was ordered by KUHN to make the change and stated, "it's

17  obvious they are trying to charge the government at a higher rate"

18     33.     Relator than asked Mr. Ross if the company was trying to bill the United States at a higher

19  rate, who responded, "it sure looks that way."

20     34.     Under information and belief, this practice occurred on previous years incurred costs

21  claims submitted to the United States DCAA for the GCTC contract.

22     35.     Relator has information, and thereon believes, that at least two other major CPFF contracts

23  were affected in a similar fashion during this time period.

24     36.     Corporate Defendants have intentionally provided false claims to the government and

25  received the benefit of those overpayments.

26     37.     Both KUHN and ANTLE have benefited as shareholders of the Corporate Defendants.

27  //

28  //

38. KUHN not only ordered the false claims to be submitted to the United States but has also received his recent promotion to Senior Vice President because he has "significantly improved Days Sales Outstanding Performance and implemented numerous improvements across the company to achieve cost savings."[1]

**PROHIBITED USES OF THE GENERAL AND ADMINISTRATIVE EXPENSE POOL**

39. In August of 2015, Relator also became aware that both KUHN and ANTLE had submitted personal expenses into the General and Administrative Expense pool.

40. By examining ANTLE's internal Personal Expense account and comparing it to the Incurred Cost Claim for General and Administrative ("G&A") costs, it became obvious that some of ANTLE's expenses such as a $50,000 annual golf resort fee had been submitted in to the G&A pool for submission to the United States for payment.

41. ANTLE also used his personal expense account to fly first class when traveling on company business.

42. This expense was also submitted to the G&A poll for submission to the United States for payment.

43. Under information and belief, KUHN knowingly benefitted from these same practices.

44. In 2010, the 2009 annual salary for the pricing specialist, Miranda Marlow was submitted to the G&A pool pursuant to the CAS.

45. However, in 2009, Ms. Marlow had been out for three months of Family Medical Leave to give birth to a child and was paid her regular salary during this time.

46. SALIENT nonetheless submitted a claim to the United States that included an entire year's worth of salary for this same executive.

47. Relator filed a formal complaint to Lee Davis, the Vice President of Contracts for SALIENT at the time, upon his discovery of this claim.

**RETALIATION**

48. On or about July 28, 2010, Relator had a meeting with Kay Curling, Senior Vice President of Human Resources at the time, and KUHN regarding this matter.

---

[1] Salient Federal Solutions January 5, 2015 press release

49. Relator explained that Lee Davis, the Vice President of Contracts at the time, had submitted the false claim to the United States regarding Ms. Marlow, who was out on Family Medical Leave.

50. Mr. Davis went so far as to submit internal time cards showing Ms. Marlow was at work on the same day she gave birth to her child.

51. Upon disclosing this fraud to management, and Mr. Davis' subsequent retaliatory treatment of Relator, Mr. Davis was terminated from his employment, but was held on as a consultant for another year.

52. At the same time, Relator was suddenly restricted from part of the payroll system that could verify promotions and raises to employees and was told by Ms. Curling that he should not be talking to other employees about salaries and raises.

53. Thereafter, despite positive annual reviews Relator's annual salary increases were limited to 2.5-2.8% despite others receiving 6-7% increases.

54. Upon questioning his manager, Jeremy Ross, Relator was told that the maximum salary increase is 3% across the board and he has no ability to give him a higher raise, despite his high performance.

55. In one example, Ms. Marlow was promoted in 2015 to contract manager with a raise despite not having accounting experience held by Relator.

56. Ms. Marlow and Relator were hired one week apart and shared the same office, had substantially similar roles, and the same base pay, yet in 2015 Ms. Marlow was making $110,000.00 annually compared to $87,000.00 salary of Relator.

57. In or about August of 2015, shortly after Relator learned of Defendants fraudulent claim submission on the GCTC contract, Relator was told that his employment would be terminated due to the merger between SALIENT and CRGT, Inc.

58. While the majority of similarly situated employees were told their positions would be terminated in or about December of 2015, Mr. Lim was terminated on October 9, 2015, two months before his 70th birthday.

//

1

2

3

### COUNT I

### False or Fraudulent Claim

### 31 U.S.C. § 3729(a)(1)(A)

4      59.    Relator realleges and incorporates by reference the allegations contained in all preceding

5 and all subsequent paragraphs of the Complaint as though fully set forth herein.

6      60.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims for

7 payment or approval by the DCAA, the Department of Defense and the United States Government in

8 violation of the False Claims Act for claims submitted in 2015 in relation to labor performed on the

9 GCTC contract in 2014.

10      61.    Under information and belief, this fraudulent practice took place in prior years and on

11 multiple contracts.

12      62.    Defendants also knowingly presented, or caused to be presented, false or fraudulent claims

13 for payment or approval by the DCAA, the Department of Defense and the United States Government in

14 violation of the False Claims Act for claims submitted in 2015 in violation of the CAS for inclusion in

15 charges applied to the G&A pool, including personal expenses of KUHN and ANTLE.

16      63.    Defendants also knowingly presented, or caused to be presented, false or fraudulent claims

17 for payment or approval by the DCAA, the Department of Defense and the United States Government in

18 violation of the False Claims Act for claims submitted in 2010 regarding the 2009 salary of Miranda

19 Marlow.

20      64.    Because of Defendants' acts, the United States sustained damages in an amount to be

21 determined at trial, and therefor is entitled to treble damage under the False Claims Act, plus civil

22 penalties of not less than $5,500 and up to $11,000 for each violation.

23

24

25

### COUNT II

### False Statements

### 31 U.S.C. § 3729(a)(1)(B)

26      65.    Relator realleges and incorporates by reference the allegations contained in all preceding

27 and all subsequent paragraphs of the Complaint as though fully set forth herein.

28 //

66.     Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, or false records and statements to get false claims paid or approved, by the DCAA, Department of Defense and the Unites States Government in violation of the False Claims Act for claims submitted in 2015 in relation to labor performed on the GCTC contract in 2014.

67.     Under information and belief, this fraudulent practice took place in prior years and on multiple contracts.

68.     Defendants also knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval by the DCAA, the Department of Defense and the United States Government in violation of the False Claims Act for claims submitted in 2015 in violation of the CAS for inclusion in charges applied to the G&A pool, including personal expenses of KUHN and ANTLE.

69.     Defendants also knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval by the DCAA, the Department of Defense and the United States Government in violation of the False Claims Act for claims submitted in 2010 regarding the 2009 salary of Miranda Marlow.

70.     Because of Defendants' acts, the United States sustained damages in an amount to be determined at trial, and therefor is entitled to treble damage under the False Claims Act, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

## COUNT III

### Conspiracy to Violate False Claims Act

### 31 U.S.C. § 3729(a)(1)(C)

71.     Relator realleges and incorporates by reference the allegations contained in all preceding and all subsequent paragraphs of the Complaint as though fully set forth herein.

72.     Beginning in 2010 and continuing to the present, Defendants knowingly conspired with each other and others to present, or cause to be presented, false or fraudulent claims for payment or approval by the DCAA, Department of Defense and the United States Government as set forth in Count I, or to make, use or cause to be made or used, false records or statements material to false or fraudulent claims, or false records and statements to get false claims paid or approved by the DCAA, Department of Defense and the United States Government as set forth in Count II.

U.S. Ex Rel LIM v. SALIENT FEDERAL SOLUTIONS, INC.

1    73.    Because of Defendants' acts, the United States sustained damages in an amount to be

2    determined at trial, and therefor is entitled to treble damage under the False Claims Act, plus civil

3    penalties of not less than $5,500 and up to $11,000 for each violation.

4    74.    As set forth in this Complaint, and realleged as though fully set forth in this Count,

5    Defendants performed overt acts in order to effectuate and carry out the conspiracy, with the common goal

6    and intent that false records and statements would have material effect on the United States' decisions to

7    pay claims made by Defendants, or on Defendants' behalf, through federal CPFF Contracts. Each

8    Defendant's actions within the conspiracy facilitated the endeavors of other Defendants and facilitated the

9    venture as a whole. Each of the Defendants worked with the other Defendants in carrying out the

10   conspiracy as described.

11   **COUNT IV**

12   **Retaliation**

13   **31 U.S.C. § 3730(h)**

14   75.    Relator realleges and incorporates by reference the allegations contained in all preceding

15   and all subsequent paragraphs of the Complaint as though fully set forth herein.

16   76.    Beginning in 2010 and continuing to the December of 2015, Defendants, acted in concert

17   with one another to fail to promote, prevent promotion, provide unequal and inadequate compensation,

18   restricted access and duties and ultimately terminated Relator's employment because of lawful actions

19   taken by Relator to prevent, report or stop one or more violations of the False Claims Act as proscribed

20   herein.

21   77.    Relator is entitled to reinstatement with the same seniority status that employee, contractor,

22   or agent would have had but for the discrimination, two times the amount of back pay, interest on the back

23   pay, and compensation for any special damages sustained as a result of the discrimination, including

24   litigation costs and reasonable attorneys' fees.

25   **PRAYER FOR RELIEF**

26   Wherefore, Relator, acting on behalf of and in the name of the United States of America, and on his

27   own behalf, demands and prays that judgment be entered against the Defendants, and each of them, as

28   follows:

A. In favor of the United States and Relator against each Defendant for treble the amount of damages to United States Department of Defense and other government programs from the illegal activities alleged herein, plus maximum civil penalties of $11,000 as to each Count;

B. In favor of the United States against each Defendant for disgorgement of the profits obtained as a result of their illegal schemes as to each Count;

C. In favor of Relator against each Defendant for the maximum amount allowed pursuant to 31 U.S.C.A. section 3730(d) together with an award of reasonable expenses, attorney's fees and costs incurred by Relator as to each Count;

D. In favor of the Relator against Defendant Salient Federal Solutions, Inc. and Salient CRGT Holdings, Inc. for the maximum amount allowed pursuant to 31 U.S.C.A. section 3730(h)(2); and,

D. In favor of the United States for the costs of the civil action brought to recover penalties or damages.

E. In favor of the United States and Relator for such other and further relief as the Court deems just and equitable.

PLAINTIFF-RELATOR DEMANDS A JURY TRIAL ON ALL COUNTS.

Dated: 3/23/16

LAW OFFICE OF JENNIFER B. SIVERTS

JENNIFER B. SIVERTS
Attorney for Relator

Dated:   3/21/2016

LAW OFFICE OF ADAM M. KENT

ADAM M. KENT
Attorney for Relator