1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  | UNITED STATES OF AMERICA, ex.        | Case No.:  16-cv-740-GPC-AGS
    | rel. JAVIER LIM,

12  |                                      | **ORDER GRANTING IN PART AND**
    |                 Plaintiff-Relator,   | **DENYING IN PART DEFENDANTS'**
13  |                                      | **MOTION TO DISMISS**
    | v.
14  |                                      | **[DKT. NO. 21]**
    | SALIENT FEDERAL SOLUTIONS
15  | INC., a corporation, BRAD ANTLE, an
    | individual, J.D. KUHN, an individual and
16  | DOES 1-100 inclusive,
17  |                                Defendants.
18

19
20          Before the Court is Salient Federal Solutions, Inc. and Salient CRGT Holdings,

21  Inc. ("Defendants") Motion to Dismiss.  Dkt. No. 21.  This motion to dismiss was filed

22  on March 15, 2018.  On April 5, 2018, Plaintiff-Relator Javier Lim filed a response in

    opposition and an affidavit to support that opposition.  Dkt. No. 23-24.  Defendants filed
23
    a Reply on April 20, 2018.  Dkt. No. 25.
24
            Defendants move pursuant to Rule 12(b)(6) to dismiss Count IV of his complaint
25
    on the grounds that Relator's Complaint fails to allege facts to support the essential
26
    elements of his False Claims Act ("FCA") retaliation claim.  Defendants move to dismiss
27

28

                                              1

Counts I-III of the Complaint with regard to a set of allegations related to 2015 General and Administrative Expenses for failure to plead with particularity under Rule 9(b).

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons set forth below, the Court will **GRANT in PART and DENY in PART** Defendants' Motion to Dismiss.

# I. LEGAL STANDARD

## A. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all

required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

### B.     Rule 9(b)

The FCA is an anti-fraud statute and requires fraud allegations such that complaints alleging FCA violations must fulfill the requirements of Rule 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018.  Under Rule 9(b), a heightened pleading standard applies to complaints alleging fraud, requiring that they state "with particularity the circumstances constituting fraud or mistake." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  To satisfy Rule 9(b), a pleading must identify the "who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement and why it is false.  *Id.* at 1055 Claims of fraud or mistake—including FCA claims—must be plead with particularity and must also plead plausible allegations under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *Id.*

## II.     BACKGROUND

### A.     Procedural History

Plaintiff filed this FCA action under seal on April 4, 2016.  Dkt. No. 1.  On February 23, 2018, the United States declined to intervene in the case.  Dkt. No. 13.  That same day, this Court ordered that the Complaint be unsealed and served upon the Defendants.[1]

### B.     Facts

Plaintiff-Relator Javier Lim was a project control analyst for Defendants between May 2008 and October 9, 2015.  Compl. ¶ 9.  Defendant Salient Federal Solutions was a Delaware corporation that serves as a prime contractor and subcontractor for the United States Government and is a subsidiary of Salient CRGT Holdings, Inc. *Id.* ¶¶ 10-11.  Brad Antle was Chief Executive Officer of Salient and is the current CEO of Salient CRGT and

---

[1] Defendants assert that they were served on February 17, 2018 in violation of the Court's Sealing Order.  Dkt. No. 21. at 6. Plaintiffs respond that due to a clerical error they mistakenly served the federal sealed complaint, in lieu of a state court employment case on Defendants on that date.  Dkt. No. 23 at 2.

allegedly approved the false claims submitted to the United States. *Id.* ¶ 12. J.D. Kuhn was the Vice President of Finance and Corporate Controller of Salient and now serves as Senior Vice President and Controller of Salient CRGT. *Id.* ¶ 13.[2] Kuhn allegedly ordered the false claims to be submitted to the United States and participated in prohibited uses of the General and Administrative ("G&A") Expenses Pool. *Id.* ¶ 13.

### 1. Overhead and Fringe Benefit Rate Scheme

In April 2012, Salient was awarded a Global Command Terrestrial Communications Support Contract that was a "Cost Plus Fixed Fee" contract. *Id.* ¶¶ 17-19. Such contracts allow government contractors to charge actual costs of labor, plus a fixed percentage to be applied to the total cost of labor, with the fixed percentage to be applied determined by the labor pool that provided services for that particular contract. *Id.* ¶¶ 20-21. In 2015, Defendants submitted their 2014 Incurred Cost Claims to a Defense Contract Audit Agency for approval and payment. Defendants indicated that they had used an indirect labor pool that provided for a payment on a management overhead rate of 21.00% of the total labor ("Legacy Management" pool). *Id.* ¶ 24. Plaintiff alleges that Defendants actually used a labor pool that should have only provided for an 8.10% fixed overhead charge ("International" pool), resulting in an overcharge to the United States of $709,468.63. *Id.* ¶¶ 25-26. Plaintiff alleges that in August of 2015, his supervisor and Director of Information of Systems, Jeremy Ross, approached relator and told him to change the GCTC contract fixed pool numbers from the International pool to Legacy Management pool. *Id.* ¶ 30. Plaintiff went to Director of Accounting Scott Thatcher, and asked why he was told to change the organization numbers. *Id.* ¶ 31. Thatcher responded that "it's obvious they are trying to charge the government at a higher rate." Similarly, Ross responded "it sure looks that way" in response to a question by Plaintiff as to whether the company was trying to bill the United States at a higher rate. *Id.* ¶ 33. Plaintiff alleges that at least two other

---

[2] Defendants Antle and Kuhn do not appear to have been served and no appearances have been entered on their behalf.

major contracts applied the wrong pool information to overcharge the United States. *Id.* ¶ 35.

### 2. 2010 General and Administrative Expense Pool ("2010 G&A Expense Pool") Allegations

Plaintiff alleges that in 2010 the entirety of pricing specialist Miranda Marlow's annual salary was submitted to the G&A pool as costs when Ms. Marlow had actually been out for three months of family medical leave. *Id.* ¶¶ 44-46. Plaintiff alleges that a claim was submitted to the United States that included an entire year's worth of salary. *Id.* ¶ 46. Plaintiff alleges that he filed a formal complaint to Lee Davis, Vice President of Contracts, upon discovery of this 2010 claim. *Id.* ¶ 47.

### 3. 2015 General and Administrative Expense Pool ("2015 G&A Expense Pool") Allegations

Plaintiff alleges that he became aware that Kuhn and Antle had both submitted personal expenses to the G&A Expense Pool. *Id.* ¶ 40. Antle allegedly submitted expenses to the G&A account including a $50,000 annual golf resort fee, and used his personal expense account to fly first class while traveling on company business. *Id.* ¶¶ 40-42. Plaintiff further alleges that Kuhn knowingly benefitted from these same practices. *Id.* ¶ 43.

### 4. Acts of Retaliation

On or about July 28, 2010, Plaintiff met with Kay Curling, Senior Vice President regarding the 2010 G&A Expense Pool allegations. *Id.* ¶ 48. Plaintiff explained that Lee Davis, the Vice President of Contracts had submitted the 2010 false claim regarding Ms. Marlow. *Id.* ¶ 49. Davis was subsequently fired from Salient. Plaintiff alleges that he was suddenly restricted from the part of the payroll system that could verify promotions. *Id.* ¶ 52.

Plaintiff alleges that thereafter he received limited salary increases of 2.5-2.8%, while others received 6-7% increases. *Id.* ¶ 53. He also contests that Ms. Marlow was promoted to contract manager and paid substantially more than plaintiff even though they

16-cv-740-GPC-AGS

were hired one week apart, shared the same office, and had substantially similar roles. *Id.* ¶¶ 55-56. In August 2015, shortly after Plaintiff learned of Defendants fraudulent submission on the GCTC contract, Plaintiff was told his employment would be terminated due to the merger between Salient and CRGT, Inc. *Id.* ¶ 57. Plaintiff was terminated in October 2015, while others "similarly situated" were terminated in December 2015. *Id.* ¶ 58.

## III. DISCUSSION

### A. Declaration in Opposition to Defendants' Motion to Dismiss

Relator submitted the Declaration of Javier Lim in Opposition to Defendants' Motion to Dismiss. Dkt. No. 24. In this Declaration, Relator asserts new facts related to his discharge. "In deciding a motion to dismiss, the court can consider only the pleadings and documents that are incorporated by reference therein or are properly the subject of judicial notice." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015). Courts "regularly decline to consider declarations and exhibits submitted in support of or in opposition to a motion to dismiss if they constitute evidence not referenced in the complaint or are not a proper subject of judicial notice." *See id.* (citing *City of Royal Oak Retirement System v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012).

Relator did not brief or provide any case law to support why the Court should consider his declaration. Accordingly, the Court will decline to do so, finding that his declaration raises new facts that could have been raised in the complaint. Relator may incorporate these facts into any amended complaint. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir. 2001) ("Where counsel is able to posit possible amendments that would be consistent with the operative complaint and could also possibly state a claim for relief, the complaint should not be dismissed on its face with prejudice.").

## B. Count IV – FCA Retaliation Claim

Defendants move to dismiss Count IV of Plaintiff's Complaint alleging retaliation under the False Claims Act. Section 3730(h) of the FCA prohibits retaliation against any employee "because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop one or more violations of [the FCA.]"

To establish a prima facie case under Section 3730(h), plaintiff must allege three elements: "(1) the employee must have been engaging in conduct protected under the Act; (2) the employer must have known that the employee was engaging in such conduct; (3) the employer must have discriminated against the employee because of her protected conduct." *U.S. ex. rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996). A claim for retaliation under the FCA "does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b)." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).

### 1. Protected Activity

Section 3730(h) protects employees who have engaged "in furtherance of an action" under the FCA. *Hopper*, 91 F.3d at 1269. Specific awareness of the FCA is not required, but plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action. *See id.* (citing *Neal v. Honeywell Inc.*, 33 F.3d 860, 864 (7th Cir. 1994). Acting in furtherance of a *qui tam* action can include "investigation for, initiation of, testimony for, or assistance" in such an action. 31 U.S.C. § 3730(h). The Ninth Circuit has held that an employee engages in protected activity where "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002).

Here, Relator was not required to specifically communicate an intention to bring an FCA action, and Courts within the Ninth Circuit have held that internal reporting is sufficient to plead the first element. *See United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1028 (S.D. Cal. 2017) ("Relator was not required to

specifically communicate an intention to bring an FCA action; section 3730(h) protects other steps, as well, including internal reporting."). *See also* 155 Cong. Rec. E1295, E1300 (daily ed. June 3, 2009) (extension of remarks) (statement of Cong. Berman) (stating that the 2009 amendments to the statute make "clear that this subsection protects not only steps taken in furtherance of a potential or actual qui tam action, but also steps taken to remedy the misconduct through methods such as internal reporting to a supervisor or company compliance department and refusals to participate in the misconduct").

Plaintiff has adequately pled that he engaged in protected activity as to the Overhead and Fringe Benefits and 2010 G&A Expense Pool Allegations. First, Plaintiffs' actions related to the Overhead and Fringe Benefits allegations involve a protected activity. Plaintiff approached Jeremy Ross, Director of Information Systems, and Scott Thatcher, Director of Accounting, with his concerns about changing the internal organization numbers from the 1.13 "International" pool to the 1.05 code "Legacy Management" code. Plaintiff's Complaint, as pleaded, indicates that he asked his supervisor Ross "if the company was trying to bill the United States at a higher rate," and that his supervisor responded that "it sure looks that way." Compl. ¶ 32-36.[3] In contrast to cases where the relator was "merely attempting" to get an organization to "comply with Federal and State regulations," Lim's actions and questioning of the coding changes show that he was investigating fraud, which constitutes an act in furtherance of FCA litigation. *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) ("She was not trying to recover money for the government; she was attempting to get classroom teachers into IEP evaluation sessions. She was not investigating fraud.")

Second, with regard to the 2010 G&A Expense Pool Allegations, Plaintiff asserts

---

[3] Defendants have cited to *Zahodnick v. International Business Machines Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) for the proposition that internal reporting to a supervisor does not constitute an act in furtherance of a qui tam action. Courts within the Ninth Circuit have found internal reporting to a supervisor to sufficiently plead a protected activity, particularly in light of later congressional hearings on the statute. *See United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1028 (S.D. Cal. 2017).

that he learned that the entirety of Miranda Marlow's 2009 salary had been submitted to the G&A Expense Pool, and eventually to the United States, despite the fact that she had been out for three months on maternity leave. Compl. ¶¶ 45-46. Plaintiff filed a formal complaint to Lee Davis, Vice President of Contracts, and followed up with Kay Curling, Senior Vice President of Human Resources, which resulted in the termination of Davis for ordering this false claim. Compl. ¶¶ 47-51. Accordingly, the Court concludes that plaintiff's internal reporting sufficiently pleads that he engaged in an action "in furtherance of" a *qui tam* action.

Third, with regard to the 2015 G&A Expense Pool Allegations, Plaintiff appears to allege that he investigated expense abuses by Antle, including the payment of an annual golf resort fee, and the use of a personal expense account to fly first class. *See* Compl. ¶ 40 ("By examining Antle's internal Personal Expense account and comparing it to the Incurred Cost Claim . . . it became obvious that some of Antle's expenses [ ] had been submitted in to the G&A pool for submission to the United States for payment."). Such investigation does not sufficiently constitute a protected activity in furtherance of a *qui tam* action because Plaintiff has not alleged that he internally reported this activity to any supervisors. Plaintiff's complaint only asserts that he "became aware" of these improper expenses. Compl. ¶¶ 39-43.

Accordingly, Plaintiff has sufficiently pled a protected activity as to the Overhead and Fringe Benefits and 2010 G&A Expense Pool Allegations. Plaintiff has not sufficiently pled a protected activity as to the 2015 G&A Expense Pool Allegations.

### 2. Notice

To satisfy the second element, Plaintiff must adequately allege that Defendants were aware that Lim was investigating fraud. The element of employer awareness is necessary to show that the employer possessed the necessary retaliatory intent. *U.S. ex rel. Lockyer v. Hawaii Pac. Health*, 490 F. Supp. 2d 1062, 1084 (D. Haw. 2007). In cases where courts have found an employer had notice that the employee was engaging in protected conduct, the plaintiff had produced evidence that he or she voiced a concern

about fraud on the federal government or referenced a qui tam FCA action to the employer. *Lockyer*, 490 F. Supp. 2d. at 1084-85. However, where an employee voices complaints but does not refer to any allegations of fraudulent conduct against the government, the employer lacks the requisite knowledge to make out an FCA retaliation claim. *Id.*

Plaintiff's complaint does not adequately allege that he voiced his fraud concerns as to the Overhead and Fringe Benefit Rate Allegations and 2015 G&A Expense Pool Allegations such that Defendants would have been aware of his engagement in any protected activity and would have been aware of a reasonable possibility of qui tam litigation. Plaintiff's allegations with regard to the Overhead and Fringe Benefit Rate Allegations are limited to reporting to a supervisor and Director of Accounting about the change in labor pool. *See* Compl. ¶ 31-33. Plaintiff's complaints appear to be "couched in terms of concerns" rather than threats or warnings of the possibility of FCA litigation. This is a step removed from behavior that Courts have found to sufficiently provide notice to the employer. *See Moore v. California Inst. of Tech. Jet Propulsion Lab*., 275 F.3d 838, 847 (9th Cir. 2002) (finding genuine issue of material fact where employee reported concerns to in-house counsel and head of ethics); *U.S. ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 389 (4th Cir. 2012) (finding that employer lacked notice of a potential false claims act lawsuit where complaints were "clearly couched in terms of concerns and suggestions, not threats or warnings of FCA litigation."); *Mendiondo v. Centinela Hosp. Med. Center*, 521 F.3d 1097, 1104 (9th Cir. 2008) (complaint directly to CEO about possible "civil and criminal violations").

With regard to the 2015 G&A Expense Pool Allegations, the Court agrees that Plaintiff has not adequately alleged that he reported these allegations to any supervisor. Accordingly, Salient could not have been put on notice as to these allegations. *See* Compl. ¶ 39-43.

However, Plaintiff *did* report the 2010 G&A Expense Pool Allegations in a formal complaint to the company's Vice President of Contracts. Compl. ¶ 47. Such a report

would have placed Defendants on notice of the possibility of FCA litigation. This is further supported by the fact that Kay Curling, Senior Vice President, had a meeting with plaintiff regarding this report. Compl. ¶ 48.

Accordingly, the Court finds that Relator has not adequately pled that the employer had notice as to the Overhead and Fringe Benefit and 2015 G&A Expense Pool Allegations. However, Relator's filing of an official report resulting in the termination of an employee who submitted a false claim adequately pleads notice as to the 2010 G&A Expense Pool Allegations.

### 3. Discrimination Based on Protected Conduct

With regard to the third element, discrimination based on the protected conduct, the Ninth Circuit has held that it suffices at the pleading stage to simply give notice that the Relator believes they were terminated because of practices specified in the complaint. Defendants argue that Relator's termination cannot reasonably be characterized by retaliation as his termination was the result of the merger between Salient and CRGT. Dkt. No. 21 at 15. The Court disagrees. The Ninth Circuit does not require a high showing—other than Relator's belief that he was terminated based on practices specified in the complaint—and Defendants' argument inherently presents facts that contradict the truth of the factual allegations in the complaint.

Accordingly, the Court concludes that Lim has adequately pled the third factor of a retaliation claim. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Edwards,* 356 F.3d at 1061 (noting that discovery is "often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action"); *Hill v. Booz Allen Hamilton, Inc.*, No. CIV. 07-00034, 2009 WL 1620403, at *7 (D. Guam June 9, 2009) ("At the pleading stage of an FCA case, it suffices for a plaintiff to simply give notice that she believes she was terminated because of her investigations into the practices specified in the complaint.").

### 4. 2010 Claims – Statute of Limitations

31 U.S.C. § 3730(h) establishes a three year statute of limitations for bringing a

retaliation action under the FCA. Effective October 18, 2010, a civil action under 31 U.S.C. § 3730(h) may not be brought more than 3 years after the date when the retaliation occurred. Defendants argue that Relator's allegations related to retaliation from 2010 are time-barred pursuant to this statute. Defendants contend that the Complaint describes only a single alleged retaliatory act related to the 2010 events—Relator's restriction from the "payroll" system. The Court agrees that any retaliation claimed based on a restriction from the "payroll" system would be time barred as more than three years have passed since that act of retaliation would have been undertaken by Salient.

However, Relator's complaint—taking his facts as true and viewed in the light most favorable to plaintiff—does allege several post-2010 retaliatory acts that could stem from the background of the 2010 fraud allegations that would not be time barred. *See, e.g.*, *Taul v. Nagel Enterprises, Inc.*, No. 2:14-CV-0061-VEH, 2017 WL 432460, at *6 (N.D. Ala. Feb. 1, 2017) (concluding that not all alleged retaliatory actions were more than three years old at the time of the filing of initial Complaint and allowing a non-time barred claim to survive summary judgment). These allegations include lower salary increases than an allegedly comparatively qualified Ms. Mallow, the failure to obtain promotions, and his 2015 termination. *See* Compl. ¶¶ 53-58. Relator does not specify exactly when these retaliatory actions occurred—depending on the time, the statute of limitations may not apply. Any amended complaint should clarify the exact retaliatory acts engaged in by Defendants and when these acts took place.

### 5. Conclusion

As currently pleaded, the Court concludes that Relator has only adequately pled a Section 3730(h) retaliation claim as to the 2010 G&A Expense Pool Allegations. The Court concludes that the 2015 G&A Expense Pool Allegations do not adequately plead a protected activity or notice to Salient. Similarly, the Overhead & Fringe Rate Benefits Allegations do not adequately plead notice to Salient. With regard to 2010 claims of retaliation, the Court finds that any claim based on imposing restrictions on access to a payroll system to be time barred as that act of retaliation took place more than three years

prior to the date this action was filed.

Accordingly, the Court will **GRANT in PART and DENY in PART** Defendants' Motion to Dismiss Count IV with leave to amend, finding that it would not be futile to allow Plaintiff an opportunity to correct the deficiencies within his complaint. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

### C. Count I-III – Rule 9(b)

Defendants next argue that Counts I-III must be dismissed as to the 2015 G&A Expense Pool Allegations because Relator has failed to plead these allegations with particularity.[4] Under the heightened pleading standard, the pleading must identify the "who, what, when, where, and how" of the misconduct charged, as well as why the actions were false or misleading. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

Here, the Court finds that Relator has not plausibly alleged with the requisite specificity his FCA claims related to the 2015 G&A Expense Pool Allegations. The entirety of Relator's allegations on this issue describe a $50,000 annual golf resort fee and the use of a personal expense account for flying first class. Relator has not adequately articulated his theory of *how* these expenses were fraudulent. For example, Relator does not adequately articulate the number of times Antle flew first class and whether this would be considered to be a fraudulent charge against the United States. While one may surmise that a $50,000 annual resort golf fee is a personal expense, Relator has also failed to articulate "how" that particular expense was fraudulent. In his opposition, Relator identifies for the first time that there was a discrepancy between internal charges and

---

[4] Defendants have not moved to dismiss other aspects of the fraud allegations, including the Overhead and Fringe Benefit Rate Scheme or the 2010 G&A Expense Pool Allegations. Plaintiff argues that the Court should not dismiss Counts I-III as to these actions because Defendants were provided with detailed allegations regarding these actions. Dkt. No. 23 at 7. As Defendants have not moved to dismiss on the merits of these allegations, the Court need not address this issue.

expenses billed to the government, which are allegations that may be incorporated into an amended complaint. Dkt. No. 23 at 7. Moreover, Relator makes the conclusory allegation that Kuhn "knowingly benefitted from these same practices" without indicating any specific allegations, misstatements, or fraudulent expenses that are attributable to Kuhn. Accordingly, the Court dismisses for lack of specificity any allegations related to the 2015 G&A Expense Pool in Counts I-III of the Complaint with leave to amend. The Court will grant Relator's request to "describe in further detail how submitting personal expenses such as first class flights and golf resort memberships in to the G&A fund is illegal." Dkt. No. 23 at 8. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

## IV. Defendants Kuhn and Antle

Finally, the Court observes that only Defendants Salient CRGT and Salient Federal Solutions have moved to dismiss the Complaint. The docket for this case does not indicate whether Defendants Brad Antle and J.D. Kuhn were served with service of the Complaint. No notices of appearance have been entered on these defendants' behalf. To the extent that Relator seeks to file an amended complaint and seeks to continue to include Antle and Kuhn, Relator is directed to serve these defendants with any First Amended Complaint. Failure to do so may result in dismissal of this action as to these defendants.

## CONCLUSION

Accordingly, the Court will **GRANT in PART and DENY in PART** Defendants' Motion to Dismiss Count IV and the allegations of Counts I-III related to the 2015 G&A Expense Pool with leave to amend. Any amended complaint should be filed within **Thirty Days** of the entry of this Order. The hearing currently set for June 1, 2018 is **VACATED**.

**IT IS SO ORDERED.**

Dated: May 9, 2018

Hon. Gonzalo P. Curiel
United States District Judge

16-cv-740-GPC-AGS